# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| IN HOME PERSONAL SERVICES, INC., | ) | Case No. 24-8842 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | |
| | ) | |

## DEBTOR'S SUBCHAPTER V SMALL
## BUSINESS PLAN OF REORGANIZATION DATED SEPTEMBER 17, 2024

This Small Business Plan of Reorganization (the "Plan") is presented for restructuring the debt of IN HOME PERSONAL SERVICES, INC. ("In Home Personal Services" or "Debtor") and their case called the "Chapter 11 Case"), and to seek your vote accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, a list of definitions appears at the end of this document.

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Dated: July 20, 2023

Respectfully submitted,

**IN HOME PERSONAL SERVICES, INC.**

By: _____
        One of Their Attorneys

James A. Young
James Young Law
85 Market Street, Second Floor
Elgin, IL, 60123
847-608-9526
jyoung@jamesyounglaw.com

1

## SUMMARY OF THE PLAN AND DISTRIBUTINON TO CREDITORS[1]

This is the Debtor's Subchapter V Small Business Plan of Reorganization. If the Plan is confirmed by the Bankruptcy Court entering what is known as the "Confirmation Order," the Debtor will emerge from bankruptcy and continue to operate their business. After the entry of the Confirmation Order, the Debtor is referred to as the "Reorganized Debtor." Capitalized terms are defined in the text of this Plan or in Article XIV entitled "Defined Terms."

The Bankruptcy Code directs the Debtor to construct Classes for the different types of Claims and Interest asserted against the Debtor and then to establish the treatment that will be provided to Creditors or Interest holders with Claims or Interests in each Class. If the Plan impairs the rights of Creditors or Interest holders in a Class, the member of the Class holding Allowed Claims or Interests can then vote for or against this Plan. In these Chapter 11 Cases, the Debtor is proposing a plan that contains four (4) separate Classes of Claims and Interests. The Classes for this Plan are identified in the following chart, which also identifies whether the Class is impaired or unimpaired and whether the holders of Allowed Claims or Allowed Interests in such Classes can vote for or against the Plan. Even if a Class is impaired, only those in the Class holding Allowed Claims or Allowed Interests are entitled to vote.

| Class | Claimant(s) | Impaired or Unimpaired | Permitted to Vote | Projected Recovery |
|---|---|---|---|---|
| 1 | Non-Priority Tax Claim of Internal Revenue Service and IDES | Impaired | Yes | 100% |
| 2 | Secured Claim of SBA | Impaired | Yes | 100% |
| 3 | Unsecured Claim general unsecured creditors ("GUC") | Impaired | Yes | 10% |
| 4 | Holders of Equity Interests in In Home Personal Services, Inc | Unimpaired | No | N/A |

As illustrated above, the Debtor believes that all unsecured creditors in Classes 1 ,2 and 3 will receive 10% of the Allowed amount of their Claims. These Classes of Claims will be paid in combination through post-petition payments from the Debtor's continued operation and expected tax refund, and from the Debtor's cash on hand and future disposable free cash flow. Conversely, in the absence of the Plan, the Debtor would be liquidated, and creditors would fare much worse than under the Plan. The Plan provide that the Debtor's leases will be assumed.

Claimants or Interest holders in Classes 1, 2 and 3 are Impaired. All other Classes of Creditors and Interest holders are Unimpaired by the Plan. As noted above, all Allowed General Unsecured Claims (Class 3) will receive 10% of their claims. The tax claims of the IRS (Class 1) will be paid from

---

[1]     This is a summary only, and if there is any dispute between the terms described in this summary and the definitions, actual treatment of Creditors or the means of implementation under the Plan, the definitions, accrual treatment of Creditors and the means of implementation shall control.

Debtor's cash flow within 60 months of the Confirmation Date. Class 2 Claims of the SBA shall be paid the full amount of their Allowed Claim in full on the Effective Date or 60 months under a consensual Plan  or within 60 months of the Effective Date if non-consensual.

## ARTICLE I.
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

    1.1    **Ownership Structure; Nature of Business. In Home Personal Services** is an Illinois corporation and operates in Illinois and other locations. The ownership structure of the In Home Personal Services is as follows:

| |
|---|
| **Michael Collura**<br>President and Disbursing Agent under the Plan holds the 100% interest in the Debtor |

### Nature of Business; History of Business Operations of the Debtor.

    Michael Collura founded In Home Personal Services, Inc., in 2008. In Home Personal Services, Inc., provides non-medical personal services for patients and elderly individuals that need help with everyday needs, such as laundry, housekeeping, meal preparation etc.,. As of the Petition Date, the Debtor has approximately 28 employees or independent contractors. In addition, to general personal services the Debtor offers other more specialized services that include medication remainders, wake up calls and companionship services. Collura has bult his business for over 20 years and saw increases in gross revenue from 2010 up until the Covid 19 epidemic which brought his business to a near stop.  The pandemic created a situation in which patients and clients prohibited the Debtor from entering their homes and caused the Debtor to seek out a PPP loan from the SBA. The slow recovery and reluctance of seniors to allow anyone in their homes slowed down the Debtor's recovery. After the filing of the Petition the Debtor has shown a marked increase in revenue and been able to continue its operations and has timely filed all required monthly operating reports with the Bankruptcy Court.  As reflected in the Debtor's most recent operating report, the Debtor's income for the Month of July was $303,870.0.

### Filing of the Debtor's Chapter 11 Cases.

    On June 15, 2024, the Petition Date, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and elected to proceed under Subchapter V, commonly known as the Small Business Reorganization Act of 2019. The Debtor's Chapter 11 case is pending in the Bankruptcy Court. The Debtor has filed this Plan to address the Claims and Interests against the Debtor.

1.2   **Debtor's Assets As of the Petition Date.**

In Home Personal Services owns all assets of the Debtor which include: (a) cash on hand, and accounts (b) certain utility deposits and other prepaid expenses, (c) accounts receivable (primarily due from client services). (d) a condo (e) two vehicles (f) Tax refunds.

1.2   **Debtor's Liabilities.** The approximate amount of the Debtor's liabilities in each of the Plan Classes as of the Petition Date is below. All of the below Claims are asserted against In Home Personal Services. The below chart also lists the equity security holders' Interests in In Home Personal Services in Class 4.

| Class | Claimant(s) | Approximate Amount Claims as of Petition Date |
|-------|-------------|-----------------------------------------------|
| 1 | Non-Priority Tax Claim of IDES and the IRS[2] | $79,247.00 |
| 2 | SBA Secured claim | 634,026.00 |
| 3 | General Unsecured Claims | $2,008,811.00 |
| 4 | Equity Security Holders in Peking | N/A |

1.3   **Current and Historical Financial Conditions.** The Debtor's financial statement for the year 2024 and twelve month trailing (TTM) summary of their revenues for the period June 16, 2023, through June 15, 2024, are attached hereto as **Exhibit 1**. The Debtor's financial projections for the period September 17, 2024, through September 17, 2027, are indicated on **Exhibit 2** and labeled "60 Month Projection."

**Secured Lender**

In Home Personal Services only secured claim is the SBA, the Debtor will pay the SBA from the tax rebates due Debtor and continuing payments from Debtor's operation over 60 months.

**Pre-Petition Performance**

In 2023 the Debtor generated revenue in the amount of $4,145,701.89. In 2020, with the onset of Covid 19 gross revenue dropped precipitously and unexpectedly to $            million. The Debtor applied for and received PPP loans through the SBA which it used to pay its business operating expenses During Covid 19.  Since 2023 the Debtor's financial performance has stabilized and marked by steady increase in revenue through the TTM, the Petition Date and as reflected in the Debtor's post-petition performance.

1.4   **Significant Event During the Bankruptcy Case.**

On June 15, 2024, the Debtor filed its voluntary petition for relief under Subchapter V. During the case, the Bankruptcy Court has held hearings entered the following orders:

Appointment of Janice Seyedin as Subchapter V trustee [Dkt. No. 5];

Order Setting Subchapter V Status Conference and Deadline(s). Status conference to be held on 8/27/2024 [Dkt. No. 8];

Order to Authorizing the Debtor to Maintain Existing Bank Accounts [Dkt. No. 17];

Order Authorizing the Debtor to Employ Counsel [Dkt. No. 22];

Order Waving Ombudsman [Dkt. No. 34]

Order to Employ Accountant [Dkt. No.35]

Order entering Interim Cash Collateral [Dkt.36]

Order for 2nd Interim Cash Collateral [Dkt. 45]

1.9 **Claims Bar Date.** The final date for non-governmental unit creditors to file a proof of claim was August 9, 2024. The final date for governmental unit creditors to file a proof of claim statutorily is 180 days from the Petition Date or by November 12, 2024.

2.0 **Projected Recovery of Avoidable Transfers.** If the Plan is confirmed, the Reorganized Debtor will not pursue preference, fraudulent conveyance, or other avoidance actions arising under §§ 544 through 552 of the Bankruptcy Code, as the projected recovery is unclear and contingent. Further, the pursuit of such recovery actions is not likely to affect the Plan.

## ARTICLE II
## ADMINISTRATIVE EXPENSE CLAIMS

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered Impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code. As such, the Plan does not place the following Claims in any Class:

2.1 **Administrative Expense Claims.** Except as otherwise provided in Section 2.2 below, each holder of an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Estate Professionals) must file an application seeking allowance of their Administrative Expense Claim by no later than fourteen (14) days following the Effective Date. Allowed Administrative Expense Claims shall be paid in Cash, by the Debtor or the Subchapter V Trustee in an amount equal to the Allowed Amount of its Administrative Expense Claim on the latter to occur of (a) the Effective Date, (b) within five (5) Business Days of the date their application seeking allowance is approved by a Final Order of the Bankruptcy Court, or (c) under such other terms as may be mutually agreed upon by both the holder of such Allowed Administrative Expense Claim and the Debtor or Reorganized Debtor.

2.2 **Ordinary Course Administrative Expense Claims.** All Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during their Chapter 11 Cases shall be paid by the Debtor (a) on the Effective Date, (b) in the ordinary course of business in accordance with contract terms, (c) under such other terms as may be mutually agreed upon by both the holder of such Allowed Administrative Expense Claim and

the Debtor or Reorganized Debtor, or (d) as otherwise ordered by a Final Order of the Bankruptcy Court.

2.3     **Payment of Estate Professional Fee Claims.** Upon the allowance of an Estate Professional Fee Claim pursuant to a Final Order, the Subchapter V Trustee or Reorganized Debtor shall cause such Allowed amount to be paid to the Estate Professional as set forth more fully in section 2.1.

The following chart lists the estimated Estate Professional fee Claims as of July 21, 2023:

| Professional | Estimated Amount Owed |
|---|---|
| Law offices of James Young Law | $60,000[4] |
| Subchapter V Trustee | $3,000 |
| Total | $63,000 |

2.4     **Priority Tax Claims.**

The Debtor is aware of only one Priority Tax Claim as of the Petition Date. As of the Petition Date, and according to their claim 6-1, the IDES asserts a balance due of $15,164.49 which is marked as disputed on the Debtor's schedules.[5] To the extent the IDES holds an Allowed Claim that is a Priority Tax Claim, the Debtor shall pay any Allowed Priority Tax Claim in full with statutory interest on the Effective Date of the Plan or within the 60 months.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various classes and describes the treatment each Class will receive. The Plan also states whether each Class of Claims or Interests is Impaired or Unimpaired. A Claim or Interest is Impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors holding Allowed Claims in classes that are Impaired may vote on whether to accept or reject the Plan. A Class accepts the Plan if more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the voting Allowed Claims in a particular Class vote in favor of the Plan[6]. A Class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A Class that is Unimpaired is deemed to accept the Plan. A Class that does not receive any property under the Plan is deemed to reject the Plan and entities holding Claims or Interests in such Class are not entitled to vote on the Plan.

---

[4]     This figure is estimated through Confirmation of the Plan.

[5]     Non-voting Creditors are ignored for purposes of determine whether a Class has voted in favor the Plan

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS

The Plan provides the following treatment to classes of Claims and Interests:

4.1   **Class 1.** The Class 1 Claim consists of the contingent and Disputed non-priority tax Claims of the Internal Revenue Service and IDES against the Debtor. The Class 1 Claim is Impaired, and the Class 1 Claimant is entitled to vote on the Plan. The Class 1 Claim shall be treated as follows:

(a)   Any Allowed non-priority tax claim of the IRS or IDES shall be paid in full with statutory interest over 60 months from the date of Confirmation of the Plan.

(b)   Class 1 is Impaired, and the IDES is entitled to vote the Class 1 Claim on the Plan.

4.2   **Class 2.**

The Class 2 Claim consists of the SBA Claim as filed in Proof of Claim 9-1.  The Class 2 Claim shall be treated as follows:

(a)   The Debtor shall not be required to make any Payment on any Class 2 Claim under a Confirmed Plan until each of the following have occurred: (i) the tax credit owed Debtor by the IRS is received by the Debtor.

(b)   Upon Confirmation of a consensual Plan, and subject to the Class 2 Claim Contingencies being satisfied, the Claim of the Class 2 Claimant shall be paid on the Effective Date in the principal amount of $634,026.00 without post-petition interest, penalties or any fees.

(b)   Under Confirmation of a non-consensual Plan, and subject to the Class 2 Payment Contingencies occurring, the Reorganized Debtor shall pay the Class 2 Claim over a 60

(c)   month period following Confirmation of the Plan which payments shall commence on Class 2 Payment Due Date in equal monthly installments without interest, penalties or any fees.

(d)   Class 2 is Impaired, and the Class 2 Claimant is entitled to vote on the Plan.

4.3   **Class 3.**

Class 3 consists of the General Unsecured Claims not otherwise classified under the Plan. The Class 3 Claims shall be treated as follows:

(a)   On the Effective Date, each of the Class 3 Claims on Exhibit C shall be Allowed in the amounts set forth on such Exhibit C unless an objection to such claim is filed on or before the

Claims Objection Bar Date. To the extent that an objection to the allowance of any Class 3 Claim is filed on or before the Claims Objection Bar Date, such claim shall be deemed a Disputed Claim.

(b)      All Allowed General Unsecured Claims (Class 3) within 60 months following the Effective Date, beginning thirty (30) days after the Class I and Class 2 claims have been paid in full. The Claims will be paid in quarterly installments pro-rata and on a pari passu basis.

(c)      Class 3 is impaired, and holders of Allowed General Unsecured Claims in the Class 3 are entitled to vote on the Plan in the amount of their Allowed General Unsecured Claim. Should a Class claimant refuse or not vote on the Plan it should be considered a consensual vote for the Plan.

4.4      **Class 4.** Class 4 consists of the Equity Interests in the Debtor. On the Effective Date, the holders of the Equity Interests shall retain their interests in the Debtor. These claims are not entitled to any payment on account of their Equity Interest under the Plan except for any surplus that remains after all Allowed Claims are paid in full. These interest holders shall retain all of their legal and equitable interests which will be unaffected. These claims are unimpaired and not entitled to vote on the Plan.

### ARTICLE V
### ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.1      **Certain Claims Automatically Allowed on Effective Date.** All Claims described in Class 3 in the amounts set forth as Exhibit 4 of the Plan shall become Allowed Claims on the Effective Date unless an objection to any such Claim is filed on or before the Claims Objection Bar Date, in which case such Claim shall be deemed a Disputed Claim.

5.2      **Disputed Claims.**

(a)      From and after the Effective Date, the Reorganized Debtor shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate all objections to the Disputed Claims. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Reorganized Debtor effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim not designated, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.

(b)      Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. §157(b)(2)(B),

(c)      Notwithstanding any provision herein to the contrary, no Distribution shall be made to the holder of a Disputed Claim unless and until such Disputed Claim becomes an Allowed

Claim. So long as all other contingencies contained in the Plan have been satisfied, the Debtor, the Reorganized Debtor, or Subchapter V Trustee shall be authorized Distribute to the Holder of such Allowed Claim payment according to the treatment of such Class under the Plan on the later of fourteen (14) Business Days after a Disputed Claim becomes an Allowed Claim.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1     **Executory Contracts.** All Executory Contracts are Assumed. Notwithstanding anything in this Article to the contrary, payment for any Cure Obligation on any Assumed lease.

6.2     **Assumption of Executory Contracts.**

Upon the Effective Date, the Debtor will be deemed to have rejected all existing executory contracts and unexpired leases that have not been previously assumed or rejected. The terms of all orders entered in the Case providing for the assumption or rejection of any executory contracts and unexpired leases shall continue in full force and effect notwithstanding confirmation of the Plan or any discharge of the Debtor.

(b)     If a counterparty to an Assumed Contract files a timely Assumption Objection, the Bankruptcy Court shall resolve such Assumption Objection. Upon resolution of an Assumption Objection, the Reorganized Debtor shall pay the applicable Cure Obligation in twelve (12) consecutive and equal monthly installments starting on the first day of the month following entry by the Bankruptcy Court of a Final Order resolving the Assumption Objection. Notwithstanding the foregoing, the Reorganized Debtor may settle any Assumption Objection without any further notice to any party or any action, order, or approval of the Bankruptcy Court. The Reorganized Debtor may reject any executory contract or unexpired lease no later than fifteen (15) days after the entry of a Final Order resolving the Assumption Obligation. In such event, the counterparty to such executory contract or unexpired lease must file a proof of claim for damages incurred in respect of such rejection no later than thirty days following such rejection.

(c)     Assumption of any Assumed Contract pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Contract at any time prior to the effective date of assumption. Anything in the Schedules and any Proofs of Claim filed with respect to an Assumed Contract that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

6.3     **Rejection of Executory Contracts.**

All executory contracts and/or unexpired leases not expressly assumed before the Confirmation Date shall be deemed rejected upon the Confirmation Date. A proof of a claim arising from the rejection of an executory contract or unexpired lease must be filed no later than thirty (30) days after the Confirmation Date or the date of rejection, whichever is later. Notwithstanding anything in this Plan to the contrary, in the event that after the Effective Date, the Reorganized Debtor or a party to an alleged executory contract or unexpired lease contends that such contract

9

or lease was deemed rejected by operation of the Plan, or, in the case of the Reorganized Debtor, the Reorganized Debtor wish to assume the subject lease or contract subsequent to the Effective Date, the Reorganized Debtor (i) shall have the right to dispute such contention and to seek an Order from the Bankruptcy Court regarding whether such contract or lease was executory or unexpired and (ii) shall have the right to assume such lease or contract if it is determined by the Bankruptcy Court that such contract or lease is executory or unexpired.

## ARTICLE VII
## MEANS FOR IMPLEMENTING THE PLAN

### 7.1    Implementation of the Plan

(a)     After the Effective Date, the Reorganized Debtor intends to continue its operations indefinitely, and under no circumstances for a period shorter than which is necessary for its repayment of all Allowed Claims as prescribed by the Plan.

(b)     The Debtor and Reorganized Debtor will be authorized and directed to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.

(c)     The Plan will be funded with cash on hand, future operating revenue, outstanding accounts receivables, the Capital Contributions, and possible new equity investors. The Plan is feasible, pursuant to Section 1129 (a)(11) of the Bankruptcy Code, based on projected income of the Debtor over the term of the Plan. Bowes In Home Care, Inc., will make the Capital Contributions, as necessary, to warrant the feasibility of the Plan and in exchange for the releases set forth in the Plan.

The Debtor's financial projections are attached as Exhibit 2. Based on these projections, to ensure the continued operations of the Debtor and no further reorganization is required, the Debtor has formulated this Plan to maximize the distributions to the Creditors while minimizing the harm to future operations. The Success of this Plan is predicated on the continued operation of the Debtor and the efforts of Collura to continue to grow its operations. The projections attached hereto demonstrate the feasibility of the Plan and likelihood of success.

### 7.2    **Post-confirmation operations**. Subject to the provisions hereof, the Reorganized Debtor will continue to operate In Home Personal Services after the Effective Date. Michael Collura shall continue to own the equity Interest in In Home Personal Services after the Effective Date, and thus no change in ownership of shall have occurred.

### 7.3    **Title to Estate Assets.**

(a)     If the Plan is confirmed under Section 1191(a) of the Bankruptcy Code, except as otherwise provided in the Plan or in the Confirmation Order, (i) all property of the Estate vests in the Reorganized Debtor on the Effective Date, and (ii) on the Effective Date, the property dealt with by the Plan is free and clear of all Claims and Interests of Creditors and Interest holders of the Debtor, except as provided herein.

(b)     If the Plan is confirmed under Section 1191(b) of the Bankruptcy Code, property of the Estate includes, in addition to the property specified in Section 541 of the Bankruptcy Code,

all property of the kind specified in that section which the Reorganized Debtor acquires, as well as earnings from services performed by the Reorganized Debtor, after the Petition Date but before the case is closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code, whichever occurs first. Except as provided in Section 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Reorganized Debtor shall remain in possession of all property of the Estate.

# ARTICLE VIII
# GENERAL PROVISIONS

8.1    **Post-Confirmation Governance.**

On and after the Effective Date, Michael Collura will continue to hold and maintain her role as President, board of director, employee and sole shareholder of In Home Personal Services.

8.2    **Tax Consequences of the Plan.**

**Creditors and Equity Interest holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.**
The Debtor does not believe the Plan will materially affect the Debtor's tax situation.

8.3 **Role of the Subchapter V Trustee After the Effective Date.**
Regardless of whether the Plan is confirmed under Section 1191(a) or (b) of the Bankruptcy Code, from and after the Effective Date, the Subchapter V Trustee will continue to perform the applicable duties under Section 1183(a) of the Bankruptcy Code and shall further monitor the Reorganized Debtor's compliance with the confirmed Plan. The Subchapter V Trustee shall be compensated after the Effective Date at the same rate and on the same basis as before the Effective Date, except that the Subchapter V Trustee shall not be required to file a fee application with the Bankruptcy Court for services rendered after the Effective Date. The Reorganized Debtor shall promptly pay the Subchapter V Trustee for services rendered after the Effective Date.

8.4    **Post Confirmation Payments to Debtor's Counsel.** Estate Professional Fees incurred after the Confirmation Date shall be paid in the ordinary course of the Debtor's business and without need for prior Court approval. Professional fees may include fees of the Debtor's counsel, appraisers, and/or accountants, as may be needed and retained pursuant to court order.

# ARTICLE IX
# FEASIBILITY OF PLAN

11

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtor, unless such liquidation or reorganization is proposed in the Plan.

9.1     **Ability to Initially Fund Plan.**

The Reorganized Debtor will have enough Cash on hand on the Effective Date to fully pay all Administrative Claims, Priority Tax Claims, the Allowed Class Claims, and pay all other amounts then due under the Plan or th.

9.2     **Feasibility and Remedies for Default.**

The projections attached as part of Exhibit 2 show that the Reorganized Debtor will have the wherewithal to make all payments to Creditors as called for in this Plan. The Debtor submits that the projections comply with the feasibility standard enunciated in Section 1191(c)(3)(a) of the Bankruptcy Code because "there is a reasonable likelihood that the Reorganized Debtor will be able to make all payments under the plan and the plan provides appropriate remedies to protect the holders of claim or interests in the event that the payments are not made.

### ARTICLE X
### LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit 3. As described in the liquidation analysis, the distribution to Creditors under the Plan is greater than the distribution under a hypothetical liquidation. Furthermore, the liquidation analysis shows that holders of the Equity Interests would not receive anything on account of their Interests if the Debtor was liquidated. A liquidation analysis is attached hereto as **Exhibit D**.

### ARTICLE XI
### DISCHARGE AND RELEASE

11.1 **Discharge.**

Regardless of whether the Plan is confirmed under Sections 1191(a) or (b) of the Bankruptcy Code, as soon as practicable after the Reorganized Debtor has fully satisfied the Reorganized Debtor's Plan Funding Obligations, the Bankruptcy Court shall grant the Reorganized Debtor a discharge of all debts provided in Section 1141(d)(1)(A) of the Bankruptcy Code, and all other debts allowed under Section 503 of the Bankruptcy Code.

11.2     **Terms of Injunctions or Stays.**

Unless otherwise provided herein and/or the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Section 362 of the Bankruptcy Code, or otherwise, and

in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**11.3    Exculpation and Limitation of Liability.**

Neither the Debtor, the Reorganized Debtor, the Subchapter V Trustee, nor any of their respective current or former owners, members, partners, officers, directors, employees, managers, advisors, Estate Professionals, affiliates, or agents will have or incur any liability to any holder of any Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, without limitation, activities arising from or involving the Chapter 11 Cases, the negotiation, implementation, and execution of the Plan, the solicitation of votes for and the pursuit of confirmation of the Plan, the consummation of the Plan, any terms of the Plan or the administration of the Plan or the property to be distributed under the Plan, including, without limitation, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all post-petition activities leading to the promulgation and confirmation of the Plan, except willful misconduct, fraud, knowing misrepresentation or gross negligence as determined by a Final Order of the Bankruptcy Court. The foregoing parties will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing in this Section will (i) be construed as a release of any entity's fraud, knowing misrepresentation, gross negligence or willful misconduct with respect to matters set forth in this Section, or (ii) limit the liability of attorneys for the Debtor, the Reorganized Debtor or the Subchapter V Trustee, to their respective clients pursuant to any applicable Code of Professional Responsibility, or (iii) or preclude objections to any application seeking allowance of fees and/or expenses incurred by Estate Professionals.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

**12.1    Cramdown.**

If the Plan is not confirmed under § 1191(a) of the Bankruptcy Code, the Debtor may seek confirmation of the Plan pursuant to Section 1191(b) of the Bankruptcy Code.

**12.2    Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor, the Reorganized Debtor, and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**12.3    Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**12.4    Cash Payments.** All payments made to holders of Allowed claims under the Plan shall be made with Cash.

12.5    **Subchapter V Trustee**. Upon the closing out of the Reserve Account consistent with the terms of the Plan, the Subchapter V Trustee shall be deemed to have fully satisfied and discharged her duties under the Plan.

12.6    **Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case to the fullest extent possible under applicable law, including with regard to the following matters:

(a)    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim and to determine and resolve any Disputed Claims;

(b)    Issue such orders in aid of execution of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

(c)    Consider any amendments to or modifications of the Plan, including, without limitation, pursuant to Section 1193 of the Bankruptcy Code, or cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(d)    Hear and determine any disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

(e)    Determine requests for payment of Administrative Claims, including without limitation Estate Professional Fee Claims;

(f)    Ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(g)    Determine or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications and motions involving the Debtor that may be pending in the Bankruptcy Court on or initiated after the Confirmation Date;

(h)    Enforce all orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Cases;

(1)    Determine such other matters and such other purposes as the Confirmation Order may provide;

(j)    Issue such orders as may be necessary or appropriate to implement, execute, and consummate the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, or the Confirmation Order;

(k)     Hear and resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, implementation, enforcement or interpretation of the Plan, or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Plan or any entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(l)     Modify the Plan before or after the Effective Date pursuant to Section 1193 of the Bankruptcy Code, or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(m)     Hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(n)     Determine compromises and settlements of Claims against any Creditor, the Debtor or the Estates in connection with this case;

(o)     Determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order, or any contract, pleading, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order.

**Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 12.8   **Modification of the Plan/Default.**

(a)     The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to Section 1193(a) of the Bankruptcy Code. However, the Bankruptcy Court may require additional items including re-voting on the Plan.

(b)     If the Plan is confirmed under Section 1191(a) of the Bankruptcy Code, the Reorganized Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

(c)     If the Plan is confirmed under Section 1191(b) of the Bankruptcy Code, the Reorganized Debtor may seek to modify the Plan at any time only the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

12.9    **Date Calculation.**

When the day, or last day, for taking any action under the Plan falls on a Saturday, Sunday, or a Federal holiday, the action may be taken on the next Business Day.

12.10    **Final Decree.**

Once the Estates have been fully administered, as provided in Rule 3022 of the Bankruptcy Rules, the Reorganized Debtor, or such other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE XIII
## ATTACHMENTS

The following documents accompany the Plan:

(a)    Debtor's Financial Information, including pre-petition finances are annexed as Exhibit 1;

(b)    5 year projections are annexed as Exhibit.

(c)    List of General Unsecured Claims as Exhibit.

(d)    List of Assumed Contracts, including Cure Cost annexed as Exhibit .

(e)    Liquidation Analysis, annexed as Exhibit .

## ARTICLE XIV
## DEFINITIONS

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only and are superseded by the definitions found in the Bankruptcy Code.

14.1    **"Administrative Claimant":** Any person entitled to payment of an Administration Expense.

14.2    **"Administrative Expense Claims Bar Date":** The date that is fourteen (14) days after the Effective Date and by which any Person, including an Estate Professional, seeking payment for an Administrative Expense must file a motion or application requesting such payment, provided, however, that a Person holding an Ordinary Course Administrative Expense Claim need not file a request for allowance and payment of such Ordinary Course Administrative Expense Claim.

14.3   **Administrative Expense:** Any cost or expense of administration of these Chapter 11 Cases under Section 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Chapter 11 Cases on or before the applicable Administrative Expense Claim Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estates or operating the businesses of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of their businesses, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtor for any post-petition tax year or period, and (v) compensation or reimbursement of expenses of Estate Professionals awarded or allowed pursuant to an order *of* the Bankruptcy Court under Sections 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court); and (b) any and all other costs or expenses of administration of the bankruptcy cases that are allowed by a Final Order of the Bankruptcy Court; provided, however, that, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any Cure Claim, any Disallowed Claim, or, unless otherwise expressly provided in the Plan, any of the Claims in any Classes 1.

14.4   **Allowed Claim:** A Claim or that portion of a Claim which is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed on or before the Bar Date or the Governmental Unit Bar Date, as applicable, or, by order of the Bankruptcy Court, was not required to be so filed, or (b) as to which no Proof of Claim was filed on or before the applicable Claims Bar Date, but which has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) and (b) above, as to which either (i) no objection to the allowance of such Claim has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court, or (ii) any objection as to the allowance of such Claim has been settled or withdrawn or has been overruled by a Final Order. "Allowed Claim" shall also include a Claim that is allowed by the Bankruptcy Court in a Final Order. "Allowed", when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

14.5   **Allowed Secured Claim:** Any Secured Claim against the Debtor to the extent that it has become an Allowed Claim.

14.6   **Allowed Unsecured Claim:** An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

14.7   **Assumed Contracts:** Assumed Contracts are the executory contracts and unexpired leases that are assumed by the Debtor under the Plan pursuant to Section 365 of the Bankruptcy Code as set forth on Exhibit 2 attached hereto.

the Plan.

14.8    **Assumption Objection:** The meaning set forth in Section 6.2(b) of the Plan.

14.9    **Assumption Objection Deadline:** The meaning is set forth in Section 6.2(b) of

14.10    **Bankruptcy Code:** The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

14.11    **Bankruptcy Court:** The United States Bankruptcy Court for the Northern District of Illinois.

14.12    **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure.

14.13    **Business Day:** Any day other than a Saturday, Sunday, or any other day on which federal courts or banking institutions in Chicago, Illinois are required or authorized to close by law, executive order, or order of the United States District Court for the Northern District of Illinois.

14.14    **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

14.15    **Chapter 11 Case:** These case under chapter 11 of the Bankruptcy Code in which Peking is the Debtor.

14.16    **Claim**: The same meaning as in 11 U.S.C. § 101(5).

14.17    **Claimant**: An entity holding a Claim against the Debtor.

14.18    **Claims Bar Date:** See Section 1.9 of the Plan.

14.19    **Claims Objection Bar Date:** The date that is five (5) Business Days after the Effective Date, except that nothing shall prohibit the Reorganized Debtor from thereafter objecting to any Claim of a Claimant that failed to file a timely proof of claim.

14.20    **Class:** A category of holders of claims or interests which are substantially similar to the other claims or interests in such Class.

14.21    **Confirmation:** The entry by the Bankruptcy Court of an order confirming this Plan.

14.22    **Confirmation Date:** The date upon which the Bankruptcy Court enters the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry

of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.
Plan.

14.23 **Confirmation Hearing:** The hearing to be held to consider Confirmation of the

14.24 **Confirmation Order:** An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

14.25 **Creditor:** Any person who has a Claim against one or before of the Debtor that arose on or before the Petition Date.

14.26 **Cure Claim:** Any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, pursuant to Section 365(b) of the Bankruptcy Code or otherwise and any Claim for a default (monetary or non- monetary), arising from, relating to or in connection with the assumption by either Debtor of any Assumed Contract under the Plan.

14.27 **Cure Costs:** The amount that the Reorganized Debtor will pay the other party to an Assumed Contract to fully cure and compensate such party for any default under the Assumed Contracts as of the Confirmation Date as set forth on Exhibit 5 attached hereto.

14.28 **Cure Obligation:** Any Claim of any nature whatsoever, including Claim for any cure payment, cost or other amount, if any, pursuant to Section 365(b) of the Bankruptcy Code or otherwise and any Claim for a default (monetary or non-monetary), arising from, relating to or in connection with the assumption by either Debtor of any Assumed Contract under the Plan.

14.29 **Debtor:** Peking Duck USA, Inc.

14.30 **Disallowed Claim:** Any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

14.31 **Disputed Claim:** Any Claim or portion thereof (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules, and, in the case of subparagraph (a) and (b) above, as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court and any such objection has not been (1) withdrawn, (ii) overruled by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court. In addition to the foregoing, a Disputed Claim shall mean a Claim that is not an Allowed Claim, whether or not an objection has been or may be timely filed, if (a) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (c) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Schedules, or (e) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof. To the extent an objection relates to the

allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the amount subject to objection. "Disputed", when used as an adjective herein (such as Disputed Administrative Expense Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Secured Claim, and Disputed Unsecured Claim), has a corresponding meaning.

14.32 **Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

14.33 **Effective Date**: The Effective Date of the Plan will be the later of (i) seventeen Business Days following the date on which the Confirmation Order is entered by the Bankruptcy Court and (ii) three days after the Confirmation Order becomes a Final Order.

14.34 **Estate**: The estate created for Peking by Section 541 of the Bankruptcy Code upon the commencement of these bankruptcy cases.

14.35 **Estate Professionals:** All professionals retained by the Debtor or the Subchapter V Trustee consisting of the Subchapter V Trustee and Law Offices of Konstantine Sparagis, P.C.

14.36 **Estate Professional Fee** Claim: A Claim by one of the Estate Professionals for allowance of compensation from and after the Petition Date under Sections 326-331 of the Bankruptcy Code.

14.37 **Final Order:** An order shall become a Final Order on the day (i) that it is effective and enforceable and not subject to an automatic stay of execution or a stay pending appeal and (ii) the time to appeal, petition for writ of certiorari, or move for re-argument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment (collectively, a "Modification Measure") has expired either because no Modification Measure was sought within the time set by the applicable rules or because no further Modification Measures are available within the time set by the applicable rules; provided, however, no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure or Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order.

14.38 **General Unsecured Claims:** Claims against the Debtor that are not secured by a lien or other interest in either of the Debtor's property and that are not entitled to priority under Section 507 of the Bankruptcy Code or other applicable law.

14.39 **Impaired.** A Claim or Interest is Impaired if the Plan alters the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest. An Impaired Claim is entitled to vote on the Plan.

14.40 **Interest:** An ownership interest in the Debtor.

14.41 **Ordinary Course Administrative Expense Claims**: Allowed Claims against the Debtor arising after the Petition Date in the ordinary course of the Debtor's business. For the avoidance of doubt, Estate Professional Fee Claims are not included within the defined term "Ordinary Course Administrative Claims.

14.42   **Peking:** Peking Duck USA, Inc., debtor in Case No. 23-5135.

14.43   **PPP or Paycheck Protection Program:** A loan program established in 2020 through the Coronavirus Aid, Relief, and Economic Security Act.

14.44   **Persons**: The same meaning as in Section 101(41) of the Bankruptcy Code.

14.45   **Petition Date:** April 19, 2031, the date the Debtor's chapter 11 petitions for relief were filed with the Bankruptcy Court.

14.46   **Plan**: This Subchapter V Plan.

14.47   **Priority Tax Claim:** Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

14.48   **PPP Rules:** All statutes, rules, regulations, guidance or other program requirements now existing or hereafter arising under the Paycheck Protection Program.

14.49   **Rejection Claim:** A Rejection Claim is any claim arising out of the Debtor's rejection of an executory contract pursuant to Section 365 of the Code.

14.50   **Rejected Contracts:** Rejected Contracts are the executory contracts that are rejected by the Debtor under the Plan pursuant to Section 365 of the Code.

14.51   **Reorganized Debtor:** The Debtor after the Effective Date.

14.52   **Reserve Account:** An account under the control and dominion of the Subchapter V Trustee into which the Reorganized Debtor shall deposit funds pursuant to Section 7.1 (b) of this Plan.

14.53   **Restaurant Landlord:** The landlord on the Restaurant Lease as listed on Exhibit 5 hereto including, but not limited to, RN 124/124 Company, LLC its predecessors, successors, assigns or affiliates.

14.54   **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

14.55   **Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

14.56   **Subchapter V Trustee:** Matthew Brash, the trustee appointed pursuant to 11 U.S.C. § 1183(a).

14.57   **Unimpaired.** A Claim or Interest is Unimpaired if the Plan does not alter the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest. An Unimpaired Claim is not entitled to vote on the Plan.

14.58   **Unsecured Creditor:** Any Creditor that holds a Claim in the Chapter 11 case that is not a Secured Claim.

Dated: September 17, 2024                          Respectfully submitted,

                                                  **IN HOME PERSONAL SERVICES, INC.**


                                                  By:___James Young_____
                                                       One of Their Attorneys

James A. Young
Law Offices of James Young
85 Market Street, Second Floor
Elgin, IL, 60123
847-608-9526
jyoung@jamesyounglaw.com